Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 7871 | **DATE** | 5/20/2004 |
| **CASE TITLE** | Anderson, et. al. Vs. Board of Education of the City of Chicago, et. al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Status hearing held. For the reasons stated in the attached memorandum opinion and order, plaintiff's complaint is dismissed without prejudice. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | MAY 2 1 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | JXM | 18 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| MF | courtroom deputy's initials | 2004 MAY 20 PM 3:30 U.S. DISTRICT COURT CLERK | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

ARTHURINE ANDERSON and )
AUREA PEDRAZA, )
)
    Plaintiffs, ) No. 03 C 7871
)
v. ) Judge John W. Darrah
)
BOARD OF EDUCATION OF THE CITY OF )
CHICAGO, a body politic and corporate; and )
ARNE DUNCAN, CHERYL NEVINS, and )
WENDY HAAS, in their individual capacities, )
)
    Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Arthurine Anderson and Aurea Pedraza, filed suit against Defendants, alleging that the Defendants violated their due process rights and the Illinois School Code. Plaintiffs seek civil damages and injunctive relief pursuant to 42 U.S.C. § 1983. Presently before the Court are the Board of Education of the City of Chicago's and the individual Defendants' Motions to Dismiss.

In reviewing a motion to dismiss, the court considers all facts alleged in the complaint and any reasonable inferences drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). A plaintiff is not required to plead the facts or the elements of a claim, with the exceptions found in Federal Rule of Civil Procedure 9. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002); *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002) (*Walker*). Dismissal is warranted only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The "suit should not be dismissed if it is possible to



hypothesize facts, consistent with the complaint, that would make out a claim." *Graehling v. Vill. of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

## ALLEGED FACTS

A reading of the Complaint supports the following summary of the alleged operative conduct of the parties.

Anderson and Pedraza are certified teachers employed by the Board of Education of the City of Chicago (the "Board"). Arne Duncan is the Board's Chief Executive Officer. Cheryl Nevins is the Board's Director of Labor and Employee Relations. Wendy Haas is the Board's Director of the Bureau of Employee Health Services in the Department of Human Resources.

Anderson has been employed by the Board since 1984 and has attained the status of tenure under the Illinois School Code. On or about October 16, 2002, Anderson received a letter from Duncan directing her to submit to a mental health examination for the purpose of determining her fitness for duty. The examination was scheduled to be completed by Dr. Kyle V. Hunneke, Psy.D., a licensed clinical psychologist selected by the Board.

On or about October 21, 2002, Anderson was examined by Dr. Hunneke. By letter dated October 25, 2002, Haas notified Anderson that the Board was placing her on a medical leave of absence of two-and-one-half years' duration. The medical leave was based on the assessment by Dr. Hunneke. The letter also informed Anderson that she could submit evidence to Haas as a way of contesting the leave. The medical leave was involuntary and without pay.

Dr. Hunneke's written report of Anderson's evaluation contained no diagnosis of any specific mental illness or impairment with regard to Anderson's fitness to perform her teaching duties. Nevertheless, he recommended that Anderson not return to work until she engaged in therapy, based upon "reports" he had received of alleged behavior by Anderson.

In January 2003, Anderson twice submitted notes to Haas from her physician certifying Anderson's fitness. Anderson also submitted a letter from Dr. David D. Kelner, a licensed adult psychiatrist, that stated he had evaluated Anderson on January 7, 2003 and January 24, 2003, and found that Anderson did not meet the criteria for any mental disorder. He further opined that Anderson was fit to return to teaching. Based on Dr. Kelner's evaluation and opinion, Anderson demanded to be reinstated to her teaching position and for backpay for the time she lost as a result of the medical leave imposed upon her.

On January 15, 2003, in response to the medical evidence submitted by Anderson, Haas scheduled an appointment for Anderson to be reevaluated by Dr. Hunneke. On February 26, 2003, Anderson objected to any reevaluation and asked to be informed of the Board's procedures for an independent medical examination. On March 14, 2003, Haas provided Anderson an additional list of doctors chosen by the Board from which Anderson might choose a doctor for an evaluation.

On May 21, 2003, Anderson informed the Board that the issue of her reinstatement was not likely to be resolved through her being examined by another doctor selected by the Board, in part, because there were no procedures in place to contest any finding resulting from such examination. Anderson again demanded reinstatement and backpay or the commencement of an immediate evidentiary hearing to contest the medical leave.

On August 6, 2003, Nevins sent Anderson a letter stating that the Board would conduct an

3

"evidentiary hearing" on August 21, 2003. According to the letter, the hearing would consist of formally advising Anderson of her right to select from one of five independent physicians selected by the Board to evaluate Anderson's fitness to return to work. By letter, Anderson responded that she declined such a procedure in place of a hearing and again demanded a due process hearing in accordance with her rights provided to tenured teachers. The Board failed to respond to Anderson's demand and has refused to grant Anderson a meaningful hearing.

Pedraza has been employed by the Board since 1975 and has attained the status of tenure under the Illinois School Code. On or about January 8, 1998, Paul Vallas, the then-Chief Executive Officer for the Board, at the request of the principal of the Duprey Elementary School, to which Pedraza was assigned, directed Pedraza to submit to a medical examination by a mental health professional to determine her fitness for duty.

On January 16, 1998, Pedraza was examined by Dr. Eugene V. Morrisey, a clinical psychologist selected by the Board. Despite citing no psychological or psychiatric sympotms and despite Pedraza's normal mental health results, Dr. Morrisey recommended that Pedraza not be returned to classroom duty. By letter of January 16, 1998, Michael Quigley, the then-Medical Administrator for the Board, notified Pedraza that as a result of Dr. Morrisey's evaluation, Pedraza was required to apply for a medical leave of absence until she received treatment and was subsequently reevaluated. Pedraza refused to apply for a medical leave and was then reassigned from her teaching position to a non-teaching position for the Board. In March 1999, Morrisey reevaluated Pedraza and issued a letter stating that "nothing has changed." Pedraza continued to be assigned to non-teaching duties.

On August 6, 2001, Pedraza received a letter from Haas informing her that a reevaluation of

4

Pedraza had been scheduled with Dr. Robert Heller, a licensed clinical psychologist selected by the Board. Pedraza was evaluated by Dr. Heller. Dr. Heller's report indicated normal psychiatric test results for Pedraza. Nevertheless, he "agreed with" the previous assessment of Dr. Morrisey that had been provided to him by the Board. Dr. Heller recommended that Pedraza not return to work.

Based on Dr. Heller's report, Haas notified Pedraza on September 25, 2001, that the Board was placing Pedraza on a two-year medical leave of absence. The medical leave was involuntary and without pay.

On February 21, 2003, Pedraza provided Haas with a medical report from Dr. David J. McNeil, a licensed psychiatrist. Dr. McNeil's report indicated that he had examined Pedraza on July 15, 2002 and January 13, 2004. Dr. McNeil found no psychiatric or psychological disorder that would prevent Pedraza from teaching. McNeil was unable to find any objective evidence of a disorder and found Pedraza fit for work.

After receiving Dr. McNeil's report, Haas scheduled Pedraza to be reevaluated by Dr. Heller. Pedraza requested an independent medical examination to be conducted by someone other than Dr. Heller. On March 14, 2003, the Board provided Pedraza with a list of five persons whom Pedraza could select for an independent examination. Pedraza agreed to be examined by Eric Ostrov, a "certified Forensic Examiner."

On May 30 and 31, 2003, Pedraza was examined by Ostrov. In his report, Ostrov found "no significantly elevated clinical scale scores." However, Ostrov concluded that Pedraza was unfit. Based on Ostrov's report, the Board refused to allow Pedraza to return to work. Instead, Haas extended Pedraza's involuntary illness leave to April 5, 2004.

## ANALYSIS

Defendants argue that Plaintiffs' due process claims should be dismissed because the Plaintiffs have adequate state law remedies to address the alleged deprivation.

A constitutional deprivation of due process actionable under Section 1983 "is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990) (*Zinermon*). To determine whether a constitutional violation has occurred, the court examines the procedural safeguards built into the statutory or administrative procedure effecting the deprivation and any remedies for erroneous deprivations that are provided by statute or tort law. *See Zinermon*, 494 U.S. at 127. Accordingly, there is no deprivation of due process if the actor's conduct was random and unauthorized and adequate state law remedies exist to remedy the loss. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981); *Veterans Legal Def. Fund v. Schwartz*, 330 F.3d 937, 939-40 (7th Cir. 2003) (*Schwartz*); *Easter House v. Felder*, 910 F.2d 1387, 1404 (7th Cir. 1990) (*Easter House*).

In determining whether an actor's conduct was random and unauthorized, the court considers whether the conduct was predictable. *See Zinermon*, 494 U.S. at 136; *Schwartz*, 330 F.3d at 940; *Easter House*, 910 F.3d at 1400. Predictability is determined by the amount of discretion afforded the state actor and whether that discretion is uncircumscribed. *See Easter House*, 910 F.3d at 1400. If a state procedure allows unfettered discretion by a state actor, "an abuse of that discretion may be predictable, authorized, and preventable with a pre-deprivation process." *Hamlin v. Vaudenberg*, 95 F.3d 580, 583 (7th Cir. 1996) (*Hamlin*). Conduct that is contrary to state law is not predictable and, therefore, random and unauthorized. *See Schwartz*, 330 F.3d at 941 (conduct that is contrary

to laws of Illinois is random and unauthorized); *Hamlin*, 95 F.3d at 585 (conduct in violation of state procedures is unpredictable and, therefore, random and unauthorized).

In the instant case, Plaintiffs allege that Defendants' conduct of not providing a pre-deprivation hearing is in violation of the Illinois School Code, 105 ILCS 5/34-85. The Illinois School Code requires that the Board adopt charges and specifications against the teacher and allow the teacher to request a hearing on those charges before an independent hearing officer before removal of that teacher. 105 ILCS 5/34-85. Plaintiffs have alleged that the Defendants' conduct is contrary to Illinois law. As such, this conduct is random and unauthorized. *See Schwartz*, 330 F.3d at 941; *Hamlin*, 95 F.3d at 585.

Accordingly, Plaintiffs cannot state a claim for a violation of their due process rights if a suitable post-deprivation remedy existed for the Plaintiffs to contest their involuntary medical leave. *See Hudson*, 468 U.S. at 533; *Schwartz*, 330 F.3d at 941.

Plaintiffs do not deny that post-deprivation remedies under Illinois law are available to address their involuntary medical leave without a pre-deprivation hearing, including a writ of *certiorari* or *mandamus*. Instead, Plaintiffs argue that the post-deprivation remedy is inadequate because these state actions would not afford Plaintiffs a hearing held at "a meaningful time and in a meaningful manner." However, any remedy this Court would be able to afford Plaintiffs would also occur post-deprivation because the deprivation (involuntary medical leave) has already occurred. Accordingly, suitable post-deprivation remedies exist; and Plaintiffs cannot state a claim under Section 1983 for a violation of due process. *See Schwartz*, 330 F.3d at 941; *Easter House*, 910 F.3d at 1400-04.

Because Plaintiffs' federal claims are dismissed, the remaining state law claims are no longer pendent to any federal claim and must be dismissed without further proceedings. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Kennedy v. Schoenberg, Fisher, & Newman*, 140 F.3d 716, 727 (7th Cir. 1998). Accordingly, Plaintiffs' Complaint is dismissed without prejudice.

Dated: May 20, 2004

JOHN W. DARRAH
United States District Judge